**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STEVEN JONES, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 07-1674 (JR) |
| ) | |
| v. ) | |
| ) | |
| JAMES RITTER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MOTION OF DEFENDANTS DISTRICT OF COLUMBIA , MICHAEL BOLAND**
**AND CHARLES RAMSEY TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants[1] District of Columbia, Officer Michael Boland and Chief Charles

Ramsey,[2] by and through their undersigned counsel and pursuant to Fed. R. Civ. P.

12(b)(6), respectfully request that the Court dismiss this matter.  As explained more fully

in the accompanying Memorandum of Points and Authorities, Plaintiff's claims fail as a

matter of law as:

(1)  Plaintiff has failed to state a claim against former Metropolitan Police Chief

Charles Ramsey;

(2)  Plaintiff's claims of assault and battery are barred by the statute of

limitations;

(3)  Plaintiff has failed to state a claim for abuse of process;

(4)  Plaintiff has failed to state a claim for negligence and/or gross negligence

---

[1] At the time of the filing of this Motion, the other individual defendants named in this case, police officers
James Ritter and Steven Prade, have not been served.

[2] Plaintiff has incorrectly referred to former Metropolitan Police Department Police Chief Charles Ramsey
as "Police Commissioner Patrick Ramsey."

(5) Plaintiff has failed to state a claim for violation of the 8th Amendment to the Constitution;

(6) Plaintiff has failed to state a claim for violation of due process under the 5th Amendment to the Constitution;

(7) Plaintiff has failed to state a claim for violation of the 14th Amendment to the Constitution;

(8) Plaintiff has failed to state a claim for violation of the 4th Amendment to the Constitution; and

(9) The individual officers are entitled to qualified immunity.

Accordingly, Defendants District of Columbia, Officer Bolden and Chief Ramsey respectfully request that this Court dismiss this matter against them.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

   /s/  Nicole L. Lynch
NICOLE L. LYNCH (471953)
Chief, Section II

   /s/  Shana L. Frost
SHANA L. FROST (458021)
Assistant Attorney General
441 4th Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
Fax:  (202) 727-3625
shana.frost@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
STEVEN JONES,                             )
                                          )
            Plaintiff,                    )        C.A. No. 07-1674 (JR)
                                          )
    v.                                    )
                                          )
JAMES RITTER, *et al.*,                   )
                                          )
            Defendants.                   )
_____ )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
MOTION OF DEFENDANTS DISTRICT OF COLUMBIA, MICHAEL BOLDEN
AND CHARLES RAMSEY TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants District of Columbia, (the "District"), Officer Michael Bolden and

former Metropolitan Police Department ("MPD") Police Chief Charles Ramsey, by and

through their undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully

request that this Court dismiss Plaintiff's Complaint against them.  As set forth herein,

Plaintiff has failed to state a claim against these Defendants, and the District, Officer

Bolden and Chief Ramsey are entitled to judgment as a matter of law.

## I.    FACTUAL BACKGROUND

Plaintiff contends that on November 8, 2005, he was standing in the 800 block of

Taylor Street, NE, when he was approached by MPD Officers Ritter, Prade and Boland.

Compl. ¶ 14.  Plaintiff alleges that the officers, dressed in plain clothes and exiting an

unmarked car, "pursued in the plaintiffs' [sic] direction without any verbal warnings that

they were police personnel." *Id.*  "Fearing that the officer's [sic] were regular street

bandits, the plaintiff retrieved a small .38 caliber handgun from his waist and pointed it at

the plain clothed officers who was [sic] unknown at the time." *Id.* ¶ 15.

Plaintiff avers that the officers then identified themselves as police personnel. *Id.* ¶ 16. "The plaintiff knowing that he was in possession of an unlicensed firearm then ran from the officers, ashamed that he was led to commit a crime by pulling the gun out." *Id.* The officers then pursued Plaintiff and apprehended him in the 900 block of Taylor Street. *Id.* ¶¶ 16-17. Plaintiff contends that "[t]he officers immediately retrieved the small caliber handgun from the plaintiff and then beat him ungodly in the street." *Id.* ¶ 17. Plaintiff asserts that Officers Ritter, Boland, and Prade beat and maced him on the street and then brought him to the 5th District police station for processing. *Id.* ¶¶ 18-19.

Plaintiff alleges that three to four hours later he was taken to "Howard University Medical Center where he was treated for the injuries and lacerations to his face, arms, legs," and where he was given water for his eyes. *Id.* ¶ 20. Plaintiff contends that he "received multiple lacerations to his face and numerous bruises and abrasions to his right hand, right hip, right knee, which are still visible even to this date." *Id.* ¶ 21.

Plaintiff filed his Complaint on September 21, 2007, asserting claims of violation of the 5th, 8th and 14th Amendments to the Constitution, negligence, assault and battery, abuse of process and gross negligence.

## II.    STANDARD OF REVIEW

For many years, the oft-cited standard of review in determining the sufficiency of a complaint when faced with a motion to dismiss was that set forth by the Supreme Court in *Conley v. Gibson*: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957).

2

However, in the recent Supreme Court case of *Bell Atlantic Corp. v. Twombley*, 127 S. Ct. 1955 (2007), the Court re-examined *Conley*, observing that "*Conley's* 'no set of facts' language has been questioned, criticized, and explained away long enough." *Bell Atlantic*, 127 S. Ct. at 1969. The Court concluded that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* (citations omitted).

The Supreme Court in *Bell Atlantic* stated that a statement of grounds on which a complaint rests "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. Rather, the Court now imposes a "plausibility" standard when judging the sufficiency of a complaint in the face of a motion to dismiss. *Id.*

## III.    ARGUMENT

### A.  Plaintiff Has Failed, As a Matter of Law, to State Any Cognizable Claim Against Chief Ramsey

Plaintiff's claims against Chief Ramsey fail as a matter of law. Plaintiff has named Chief Ramsey as a defendant to this lawsuit in both his official and individual capacity. To the extent Plaintiff has sued Chief Ramsey in his official capacity, Plaintiff's claims against Chief Ramsey lie against the District. It is well-settled that "[a] suit against a municipal official in his official capacity is treated as a suit against the municipality itself." *Robinson v. District of Columbia*, 2005 U.S. Dist. LEXIS 3556 at *10 (Mar. 2, 2005 D.D.C.) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985); *Atchison v.*

*District of Columbia*, 315 U.S. App. D.C. 318, 73 F.3d 418, 424 (1996)).  Accordingly, any claims against Chief Ramsey "in his official capacity proceed against the District of Columbia."  *Id.*, citing *Arnold v. Moore*, 980 F. Supp. 28, 36 (D.D.C. 1997).

To the extent that Plaintiff has sued Chief Ramsey in his individual capacity, the action must also be dismissed.  "[I]n order to find a supervisory official personally liable in damages for the unconstitutional acts of his subordinate it must be shown that he was responsible for supervising the wrongdoer; that a duty to instruct the subordinate to prevent constitutional harm arose from the surrounding circumstances; and that, as a result of the official's failure to instruct, the plaintiff was harmed in the manner threatened."  *Fleming v. District of Columbia*, 1989 U.S. Dist. LEXIS 11796, *8 (Oct. 5, 1989 D.D.C.), citing *Haynesworth v. Miller,* 820 F.2d 1245, 1271 (D.C. Cir. 1987).  The Complaint is devoid of any allegation that Chief Ramsey had knowledge of or involvement with the allegations in the Complaint or that the alleged harm occurred as a result of any inaction on the part of Chief Ramsey.  Thus, Chief Ramsey must be dismissed from this lawsuit.

## B.  Plaintiff's Claims of Assault and Battery Are Barred By the Statute of Limitations

Plaintiff alleges that the incident that forms the basis for this lawsuit occurred on November 8, 2005.  Compl. ¶ 14.  Plaintiff did not file his Complaint in this matter until September 21, 2007, more than one year after the occurrence, and has not alleged any facts to support the application of any of the tolling provisions set forth in D.C. Code § 12-302.

The statute of limitations in the District of Columbia provides a one-year limitations period "for libel, slander, assault, battery, mayhem, wounding, malicious

4

prosecution, false arrest or false imprisonment." D.C. Code § 12-301(4). Plaintiff has asserted his claims for assault and battery more than one year after the causes of action accrued and well beyond the applicable statute of limitations. *See National R.R. Passenger Corp. v. Krouse,* 627 A.2d 489 (D.C. 1993) (for torts, cause of action accrues for statute of limitations purposes at the time the allegedly tortuous act is committed). Thus, the Court should dismiss Plaintiff's claim of assault and battery.

### C. Plaintiff Has Failed to State a Claim for Abuse of Process

The tort of abuse of process lies "where the legal system 'has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.'" *Brown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992), quoting *Morowitz v. Marvel,* 423 A.2d 196, 198 (D.C. 1980). *See also Jacobson v. Thrifty Paper Boxes, Inc.,* 230 A.2d 710, 711 (D.C. 1967). "The mere issuance of the process is not actionable, no matter what ulterior motive may have prompted it; the gist of the action lies in the improper use after issuance." *Hall v. Hollywood Credit Clothing Company*, 147 A.2d 866, 868 (D.C. 1959). Thus, "the fact that a person acts spitefully, maliciously, or with an ulterior motive in instituting a legal proceeding is insufficient to establish abuse of process. *Scott v. District of Columbia,* 101 F.3d 748, 755 (D.C. Cir. 1996). Rather, to state a claim, the Plaintiff must allege a "perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge." *Morowitz*, 423 A.2d at 198; *see also Moore v. United States*, 213 F.3d 705, 712 (D.C. Cir.), *cert. denied* 531 U.S. 978 (2000).

In his Complaint, Plaintiff complains of physical abuse, but the pleading is devoid of any allegation that the Defendants in any way misused the legal process. Thus, on the face of Plaintiff's Complaint there is no basis for an abuse of process claim, and this cause of action must be dismissed.

### D. Plaintiff Has Failed to State a Claim for Negligence and/or Gross Negligence

In the District of Columbia, a Plaintiff alleging injury caused by the excessive force of a police officer may assert more than one theory to support recovery, including assault and battery and negligence. *See District of Columbia v. Chinn*, 839 A.2d 701, 705 (D.C. 2003); *Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. 1997).[3] However, a claim for assault and battery is separate and distinct from a claim of negligence, and the pleader must assert facts to support each element of whichever claim asserted, and must offer evidence to support each claim. *Sabir v. District of Columbia*, 755 A.2d 449, 452 (D.C. 2000). As explained in *District of Columbia v. Tinker*, 691 A.2d 57, 64 (D.C. 1997), "excessive force is a term of art denoting an act of assault or battery by law enforcement officials committed in the course of their duties." *Tinker*, 691 A.2d at 64. The Court went on to say that nothing in the case law on excessive force even "hints at an element of negligence, or a tort distinct from assault and battery." *Id.*

"In other words, a plaintiff cannot seek to recover by 'dressing up the substance' of one claim [here assault and battery] in the 'garments' of another [negligence]." *Sabir*, 755 A.2d at 452 (quoting *United Nat'l Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 354 (2d

---

[3] *Chinn* has been followed by judges of this Court. *See Lucas v. District of Columbia*, 2007 U.S. Dist. LEXIS 63458 (Aug. 29, 2007 D.D.C.) (Collyer, J.); *Austin v. District. of Columbia*, 2007 U.S. Dist. LEXIS 34793 (May 11, 2007 D.D.C.) (Bates, J.); *Brooks v. District of Columbia*, 2006 U.S. Dist. LEXIS 84118 (Nov. 20, 2006 D.D.C.) (Kessler, J.); *Tafler v. District of Columbia*, 2006 U.S. Dist. LEXIS 81714 (Nov. 6, 2006 D.D.C.) (Friedman, J.); *Rynn v. Jaffe*, 457 F. Supp. 2d 22 , 25 (D.D.C. 2006) (Huvelle, J.); *Hudson v. District of Columbia*, 2005 U.S. Dist. LEXIS 11505 (June 9, 2005 D.D.C.) (Collyer, J.).

Cir. 1993)).  The *Sabir* Court bluntly held that "[t]here is no such thing as a negligent assault."  *Id.* (quoting 1 F. Harper & F. James, The Law of Torts, § 3.5 at 3:19 (3d ed. 1996)).

"In order to prevail in a negligence action, the plaintiff must prove 'the applicable standard of care, a deviation from that standard of care by the defendant, and a causal relationship between that deviation and the plaintiff's injury.'"  *Holder*, 700 A.2d at 741, quoting *Etheridge v. District of Columbia*, 635 A.2d 908, 917 (D.C. 1993).  When a negligence claim involves the use of excessive force by a police officer, our Court of Appeals has clearly stated that the "negligence must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care."  *Chinn*, 839 A.2d at 711.  The Court went on to explain that "[i]t is tautological to speak of the applicable standard of care as being the duty not to use excessive force; that is the precise boundary line of the privilege itself, and it matters not whether it is exceeded because of the deliberate intention of the officer or through a mistake as to the limit of objectively reasonable allowable force."  *Id.*

In his Complaint, Plaintiff's allegations focus only on the alleged excessive force of the officers; there are no allegations pertaining to a negligence cause of action.  Plaintiff makes no allegations of an appropriate standard of care and a deviation from such standard by an act other than the alleged excessive force itself.  Plaintiff also errs in that he does not plead "at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself."  *Chinn*, 839 A.2d at 711.  Instead, Plaintiff

rests all his allegations on the alleged excessive force, and fails to state a claim upon which relief can be granted for a cause of action for negligence.

Similarly, Plaintiff's claim for gross negligence must fail for the same reason – Plaintiff has not pled deviation from a standard of care other than the duty to not use excessive force. Additionally, "gross negligence" is not an appropriate legal theory in this case. The gross negligence cause of action was statutorily created and only applies against the District of Columbia when a plaintiff suffers injuries allegedly caused by a District of Columbia emergency vehicle that is engaged in an emergency run. *See* D.C. Code § 2-412. As there is no emergency run at issue in this case, Plaintiff has failed to state a claim upon which relief can be granted for "gross negligence" and this claim must be dismissed.

### E.  Plaintiff Has Failed to State a Claim for Violation of the Eighth Amendment

Plaintiff's constitutional claims must be dismissed because the Complaint fails to allege a violation of the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishments on those convicted of crimes. In 1976, the Supreme Court first acknowledged that the provision could be applied to some deprivations arising out of an inmate's confinement that were not specifically part of the prison sentence, but were suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97 (1976).

Plaintiff's Complaint fails to state one essential fact: that he was convicted and incarcerated at the time of the incident that serves as the basis of his Complaint. Rather, Plaintiff admits that he was approached by undercover police officers while out on the street, pulled a gun on them, and was subsequently allegedly beaten and arrested. Compl.

¶¶ 14-17.  Plaintiff is not complaining about some condition of confinement; rather, his cause of action arises out of an alleged incident on the street before he was even arrested. Accordingly, there is no basis for a claim under the Eighth Amendment, and this claim must therefore be dismissed.

### F.  Plaintiff Has Failed to State a Claim for Violation of Due Process

Plaintiff asserts that he "was deprived of rights secured by the Constitution of the United States, including . . . [the] Fifth and Fourteenth Amendment rights to due process of law, including the right to be free from unjustified and excessive force utilized by police."  Compl. ¶ 32.  Plaintiff has not, however, properly stated a claim under the due process clause.

First, the 5th Amendment is inapplicable to this case as the actions that Plaintiff claims underlie his cause of action are the alleged assault and battery.  Hence, such a claim is more properly analyzed under the 4th Amendment.  See *Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims"); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen must be analyzed under the Fourth Amendment and its 'reasonableness' standard.").

Second, the 14th Amendment does not apply to the District of Columbia.  *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).  Therefore, Plaintiff's due process claims must be dismissed.

### G.  As a Matter of Law, Plaintiff Has Not Stated a Claim for Violation of the Fourth Amendment

Plaintiff has not alleged a violation of his Fourth Amendment rights.  First, Plaintiff's facts regarding the officers' actions in apprehending and arresting him do not state a claim that rises to the level of a constitutional violation.  Moreover, even if Plaintiff could prove a Fourth Amendment violation, the officers are entitled to qualified immunity.

"When confronted with a claim of qualified immunity, a court must ask first the following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'"  *Brosseau v. Haugen,* 543 U.S. 194 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The Supreme Court has recognized that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham,* 490 U.S. at 396, citing *Terry* v. *Ohio*, 392 U.S. 1, 22-27 (1968).  Thus, to determine whether an officer has violated a right protected by the Fourth Amendment, courts will apply a standard of objective reasonableness in light of the facts and circumstances confronting the officer.  *Graham*, 490 U.S. at 396; *Saucier*, 533 U.S. at 202.

To make the inquiry of the "'reasonableness' of a particular use of force" the Court must judge the officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham,* 490 U.S. at 396, citing *Terry,* 392 U.S. at 20-22.  Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments

-- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Here, Plaintiff admits that he pulled out an illegal, unlicensed gun and pointed it at the police officers. Compl. ¶¶ 15-16. Even once Plaintiff realized that the individuals were police officers, he ignored police commands and fled with his illegal, unlicensed deadly weapon. *Id.* ¶ 16. Once the officers were able to apprehend the Plaintiff, they allegedly beat him and subdued him with pepper spray. *Id.* ¶¶ 17-18. It would appear to a reasonable officer that Plaintiff had threatened to kill the officers and then fled with a deadly weapon, and that some degree of force was indeed necessary to subdue the Plaintiff – who the officers knew was carrying a gun, in arresting the Plaintiff and removing a deadly weapon from the street.

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396-97. Here, the officers acted to apprehend and subdue a potentially violent felon. Indeed, the officers would have been justified in using deadly force the Plaintiff pointed a gun at them. The fact that the officers used physical force and pepper spray demonstrates that they used the least amount of force required in a potentially deadly situation.

The Supreme Court has recognized that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033

(2d Cir. 1973)).  Here, when considering the threat posed by Plaintiff, the officers actions

were objectively reasonable and no Fourth Amendment violation occurred.

### H.  Even if Plaintiff Has Stated a Claim for Violation of the Fourth Amendment, the Officers Are Entitled to Qualified Immunity

Generally, "[i]f no constitutional right would have been violated were the

allegations established, there is no necessity for further inquiries concerning qualified

immunity."  *Saucier*, 533 U.S. at 201.  However, even if the Court were to find that

Plaintiff has stated a claim of violation of his Fourth Amendment rights, the individual

officers would be entitled to qualified immunity as their actions were not clearly unlawful

at the time.

Qualified immunity arguments are especially appropriate early in the proceedings

of a case.  As noted by the Supreme Court:

> Where the defendant seeks qualified immunity, *a ruling on that issue should be made early in the proceedings* so that the costs and expenses of trial are avoided where the defense is dispositive.  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." …

*Saucier*, 533 U.S. at 200 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985))

(emphasis added).  "As a result," the Supreme Court wrote, "'we repeatedly have stressed

the importance of resolving immunity questions at the *earliest possible stage* in

litigation.'"  *Saucier*, 533 U.S. at 201 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227

(1991) (*per curiam*) (emphasis added).

In determining whether a right was clearly established at the time of a particular

incident, the Court must examine the claimed right "in light of the specific context of the

case, not as a broad general proposition."  *Saucier*, 533 U.S. at 201.  Thus, the right

alleged to be violated "must have been 'clearly established' in a more particularized, and

hence more relevant sense:  The contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right."  *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).  Indeed, "reasonable mistakes can be made as to the legal constraints on particular police conduct."  *Saucier*, 533 U.S. at 206.  "If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation."  *Brosseau,* 543 U.S. at 198.

Courts in this jurisdiction have granted police officers qualified immunity in cases where the claimed use of force was similar, if not greater than, the use of force presented here.  In *Scott v. District of Columbia,* 101 F.3d 748 (D.C. Cir. 1996), the Circuit Court upheld the district court's finding of qualified immunity for officers who "slammed" Scott to the ground, causing him to "hit the ground on his back" after Scott had attempted to leave the police vehicle in which he was being transported.  *Scott,* 101 F.3d at 759.  The officers "roll[ed] him over, putting their knees on his neck, back, and lower legs, . . . handcuffed him and 'dragged' him to a police transport vehicle."  *Id.*  The court determined that qualified immunity was justified as the officers had a reasonable belief that Scott, who happened to be a fellow police officer, was under arrest and was attempting to escape.  *Id.*  The court further noted that "[t]he fact that Scott offered to return to the police cruiser did not eliminate the need for force."  *Id.*

Similarly, in *Martin v. Malhoyt*, 830 F.2d 237 (D.C. Cir. 1987), the Circuit Court upheld a finding a qualified immunity where the plaintiff, a limousine driver, alleged that the officer "brutally grabbed" him around the waist during a traffic stop while the plaintiff was attempting to provide the officer his license and registration as the officer

requested, threw him into the driver's seat, and slammed the car door on the plaintiff's leg. *Martin*, 830 F.2d at 240, 262. The plaintiff further alleged that the officer later grabbed his arms, pulled them behind his back and placed him in handcuffs while pushing him up against the limousine. *Id.* at 262. In assessing these facts, the Court concluded:

> Tested by the standard confirmed in [*Tennessee v.*] *Garner*, [471 U.S. 1 (1985)] we are unable to characterize the *manner* in which Malhoyt arrested Martin as objectively unreasonable in light of the rapidly unfolding sequence of events. Slamming the car door on Martin's leg causes us to pause, for that action appears malicious. But under *Garner's* objective test, maliciousness is irrelevant. We must focus on whether Malhoyt's total conduct, objectively appraised, added up to a reasonable mode of arrest. We conclude that it did.

*Martin*, 830 F.2d at 262 (emphasis in original).

Finally, in *Wardlaw v. Pickett*, 1 F.3d 1297 (D.C. Cir. 1993), the Circuit Court found a deputy marshal's actions of punching the plaintiff – who rushed towards the marshals while they were physically removing the plaintiff's friend from the courtroom - in the jaw once and in the chest two to three times objectively reasonable. *Wardlaw*, 101 F.3d at 1303-04. In that case, the marshals had been informed of anticipated demonstrations and were in a narrow stairwell when the plaintiff ran towards them yelling at them not to hurt his friend.

In light of the line of cases discussed above, it is clear that the officers' actions – beating and macing an individual who had just threatened them with a gun and then tried to escape with a dangerous weapon – were not so excessive that no reasonable officer would have believed that they were clearly unlawful. Accordingly, should the Court decide that Plaintiff has stated a claim for violation of the Fourth Amendment, the officers are entitled to qualified immunity.

## IV.    CONCLUSION

Accordingly, for the reasons set forth above, the District, Chief Ramsey and Officer Boland request that the Court dismiss this matter and enter judgment in their favor.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


 /s/  Nicole L. Lynch
NICOLE L. LYNCH (471953)
Chief, Section II


 /s/  Shana L. Frost
SHANA L. FROST (458021)
Assistant Attorney General
441 4th Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
Fax:  (202) 727-3625
shana.frost@dc.gov